**UNITED STATES of America**

v.

**Walter F. FLEMING, Defendant.**

**Crim. Action No. 98–0223.**

United States District Court,
District of Columbia.

Dec. 11, 1998.

**4**

Jennifer M. Blunt, Federal Public Defender for D.C., Mitchell Mark Seltzer, Washington, DC, for Walter F. Fleming.

Patricia Zimmer Stewart, Gregg Allen Maisel, U.S. Attorney's Office, Washington, DC, for U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on the following motions filed by the Defendant, Walter F. Fleming ("Fleming"): (1) Motion to Suppress Surveillance Evidence; (2) Motion to Suppress [Physical] Evidence; and (3) Motion to Suppress Statements.

The defendant is charged in a four-count indictment with two counts of Unlawful Distribution of 50 Grams or More of Cocaine Base ("Crack"), in violation of 21 U.S.Code §§ 841(a)(1) and 841(b)(1)(A)(iii) (Counts One and Three); one count of Carrying a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.Code § 924(c)(1) (Count Two); and Unlawful Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.Code § 922(g)(1) (Count Four).

The following incidents form the basis for counts one through three. According to the government, Fleming sold 125 grams of cocaine base to a confidential informant on two separate occasions, August 21 and 26 1997. The government maintains that on the first occasion Fleming was armed with a handgun. The government made recordings of the two transactions, as well as of a telephone conversation between the defendant and the confidential informant, with a Nagra transmitter and recording device.

A Grand Jury indicted Fleming on counts one through three on June 25, 1998. An arrest warrant was issued and executed. On September 26, 1998, the F.B.I. picked up Fleming on the outstanding arrest warrant. The Fourth Count, unlawful possession of a firearm by a Convicted Felon, was added in a superceding indictment on September 26, 1998 based on the events that occurred during the defendant's arrest.

This Court held a suppression hearing on December 1, 1998 at which time it heard testimony concerning the defendant's arrest. Defendant's motions pertain primarily to Count IV of the superceding indictment. The relevant facts adduced at the hearing are set forth below.

## I. FACTS

Special Agents Matthew A. Steves, Aleta Thompson, and Richard Lee Klein arrested Fleming in the lobby of Sibley Memorial Hospital, on September 26, 1998 at approximately 2:10 p.m on information provided by a confidential informant that Fleming would be visiting a friend at the hospital on that date. During a search incident to arrest the agents found a set of keys in Fleming's front right pocket. The agents inquired whether Fleming had driven to the hospital to which Fleming answered he had not.

The agents transported Fleming to the Washington Field Office at approximately 2:41 p.m. One hour later, upon arrival at the Field Office, Fleming was fingerprinted, photographed and taken to a processing room for questioning. At 3:40 p.m., one and a half hours after his arrest, the agents read Fleming his Miranda rights.[1] After reading aloud from a form entitled, "Advise of Rights", Fleming specifically stated that he did not wish to waive his rights and requested an attorney.

---

1. FBI agent Steves testified that the FBI does not have a uniform policy as to when a person under arrest is to be Mirandized. Agent Steves said his preference was to await giving a Miranda warning until the individual has been taken to the "Field Office". By this late date, one would think the FBI would have enunciated a coherent Miranda policy.

Shortly thereafter, Special Agent Klein entered the processing room carrying the keys previously removed from Fleming's pocket. Agent Klein stated he had found Fleming's 1999 Chevrolet Tahoe at the Sibley Memorial Hospital parking lot. The defendant then stated, "I guess you will find the gun then."[2] The agents then requested that Fleming give them consent to search the Tahoe. Fleming granted this request and signed a consent to search form. Two days later, while executing the search, the FBI recovered a Loran L 9mm gun in the center console between the front seats of the Tahoe. This formed the factual basis for Count IV of the superceding indictment.

## II. ANALYSIS

### A. *The Gun*

Fleming argues the gun must be suppressed as the fruit of an unlawful search. Specifically, defendant maintains the police lacked probable cause to search the vehicle absent a warrant. The government maintains the gun is admissible on two grounds: First, it claims Fleming gave consent to search. Alternatively, the government argues the inevitable discovery doctrine permits admission of the gun since the agents would have discovered the gun during a lawful inventory search of the defendant's vehicle absent Fleming's consent to search.

2. At some point in the processing room, Fleming made a second statement about the gun in the car. According to Officer Steves, Fleming inquired why the agents had their guns drawn during the arrest to which the agents responded they believed Fleming would be armed. In response to this explanation, Fleming stated he had a gun in the car.

3. This Court finds it difficult to square the decisions taken by previous courts which have held that a request for consent does not violate a suspect's Fifth Amendment right against self-incrimination with the clear rule announced in *Miranda* that all interrogation must cease once a suspect invokes his rights. *See e.g. United States v. Shlater*, 85 F.3d 1251, 1255–56 (7th Cir.1996); *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985), *cert den'd*, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Smith v. Wainwright*, 581 F.2d 1149, 1152 (5th Cir.1978). These prior decisions fail to recognize that a request to search, while it may not always lead to a testimonial self-incriminating statement, nevertheless

### 1. *Consent to Search*

All interrogation of the suspect must cease once a defendant invokes his right to counsel under Miranda. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The term interrogation includes "any words or action...,that the police should know are reasonably likely to elicit an incriminating response from the suspect". *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

The actions of the agents in requesting consent to search after Fleming invoked his rights and specifically requested an attorney clearly violate Fleming's right to counsel that was offered to him when he was Mirandized.[3] Quite simply, once a suspect requests an attorney all substantive questioning must cease.[4] Fleming invoked his rights and specifically requested an attorney immediately prior to the agent's request for consent. In doing so, he relied on the information provided on the "Advise of Rights" form that he had a "right to talk to a lawyer for advice before we [the police or other law enforcement] ask you any questions and to have a lawyer with you during questioning". By proceeding to obtain from Fleming a "consent to search" the agents contradicted the information provided in the "Advise of Rights" form and violated the defendant's previously invoked rights.[5]

seeks "self-incriminating" information from the suspect by the "testimonial action" of the defendant, to whit: signing the consent form, something that requires the advice of counsel as much as answering any question directly put to the subject. The D.C. Circuit has not yet addressed this issue.

4. Of course this would not preclude the police asking routine questions necessary to process a suspect.

5. Not everyone in our society is trained in the law and aware of the intricacies that underlie many of our legal concepts. Even the purported "underclass" is entitled to be treated fairly where substantive rights are involved. Where an individual under arrest is told he has a right to an attorney and does not have to proceed further without one, and where an attorney is specifically requested, then common sense and basic fairness dictate that all interrogation must cease until an attorney is in place. At this point the law enforcement officer is clearly exceeding his

In the alternative, the government argues the "inevitable discovery doctrine" renders the gun admissible. The inevitable discovery doctrine allows admission of physical evidence otherwise inadmissable as the result of illegal police conduct where the same evidence would inevitably have been "discovered without reference to the police error or misconduct". *Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). The government contends the agents would have recovered the gun during a lawful inventory search of Fleming's vehicle absent the consent to search.

The agents arrested Fleming in the lobby of the hospital on an outstanding arrest warrant for drug charges. The arrest warrant in no way involved a traffic offense or the use of Fleming's car. The agents neither obtained an order of forfeiture nor a search warrant prior to conducting the search. Given the ample amount of time in which they could have obtained prior judicial approval, and the lack of any nexus linking Fleming's arrest to his vehicle, an inventory search was not inevitable. Therefore, the "inevitable discovery doctrine" does not apply and the gun must be suppressed.[6]

### B. *The Statements*

Due to the foregoing analysis, the government may not admit the gun as physical evidence in its case-in-chief. Absent the gun, there is no basis with which the government can go forward with Count IV, Possession of a Firearm and Ammunition by a Convicted Felon. It is not necessary, therefore, to consider defendant's arguments that the agents obtained his statements about the gun

in violation of his Due Process rights since the government does not seek to introduce these statements for any purpose other than to prove the elements of Count Four.

### C. *Electronic Surveillance*

18 U.S.C. § 2511(2)(c) authorizes law-enforcement agents to intercept or record private communications so long as "one of the parties to the communication has given prior consent". The courts have interpreted this provision to apply to secretly recorded communications between a defendant and a confidential informant. *United States v. White*, 401 U.S. 745, 748–54, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *United States v. Barone*, 913 F.2d 46, 47 (2nd Cir.1990).

Agent Steves testified that the communications were recorded with the consent of the confidential informant. Accordingly, the requirements of the statute were met and there is no legal basis for suppressing the tapes at this time.[7]

For the foregoing reasons, the gun found in Fleming's Tahoe will be suppressed as the fruit of an unlawful search. The government may admit the tape recordings of defendant's conversations with the confidential informant provided it obtains a stipulation or judicial determination of authenticity and trustworthiness.

An appropriate order accompanies this Memorandum Opinion.

### *ORDER*

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

---

or her authority in proceeding further by additional questioning or asking the individual to give up certain substantive rights by signing consent forms.

To bring a halt to such questionable practices should be the responsibility of the law enforcement agencies themselves exercising appropriate supervisory oversight. It should not require the constant judicial intervention that is now the case.

6. Even if the Court did not suppress the fruit of the search of Fleming's car, it would have severed Count IV from the trial of Counts I,II, and III. This is because Count IV was not germane to, and did not arise out of, the facts underlying

Counts I, II and III and because of the prejudicial effect that proof of the elements of the crime, namely the allegation regarding a prior felony offense would have on the trial on Counts I, II and III. Accordingly, with respect to any further action pertaining to Count IV, Count IV will be severed.

7. As the Court noted at the hearing, this ruling does not foreclose the possibility that the tapes might be suppressed on other grounds, such as lack of authenticity. If the parties do not agree to stipulate as to the authenticity and trustworthiness of the tapes, as represented by both sides at the hearing, the court will consider the necessity for a suppression hearing to determine any remaining issues with respect to the tapes.

**ORDERED** that Defendant's Motion to Suppress Surveillance Evidence is **DENIED**; and it is

**FURTHER ORDERED** that Defendant's Motion to Suppress [Physical] Evidence (the gun found in the Chevrolet Tahoe) is **GRANTED**; and it is

**FURTHER ORDERED** that Defendant's Motion to Suppress Statements is **MOOT**; and it is

**FURTHER ORDERED** that with respect to any further action on Count IV that Count is hereby severed and the trial on Counts I, II, and III will proceed on January 7, 1999 at 10:30 a.m.