193 P.3d 1215

STATE of Hawai'i, Plaintiff–Appellant,

v.

Timothy L. RIPPE, Defendant–Appellee.

No. 28225.

Intermediate Court of Appeals of Hawai'i.

July 31, 2008.

Brian R. Vincent, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Beau J. Bassett, Deputy Public Defender, on the briefs, for Defendant–Appellee.

RECKTENWALD, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by
RECKTENWALD, C.J.

This case requires us to determine whether a police officer's request to a defendant for consent to search a bag constituted interrogation. We must also decide whether the defendant, who denied ownership of the bag in response to the officer's request, abandoned the bag and thus relinquished any reasonable expectation of privacy in it.

On January 30, 2006, Honolulu police received a report that Defendant–Appellee Timothy L. Rippe had been observed removing a license plate from a vehicle parked in Waikiki. A police officer then saw Rippe in the area carrying a license plate. The officer subsequently observed Rippe leaning over the back of a silver BMW. The officer detained Rippe for questioning, and later arrested Rippe after confirming that the license plate had been taken from a car that did not belong to him.

Police also recovered a blue nylon bag which was partially sticking out from under the driver's seat of the BMW. Police Sergeant Mark Cricchio asked Rippe if he would

be willing to sign a form consenting to a search of the bag, and Rippe responded that the bag was not his. After Sergeant Cricchio asked Rippe several follow-up questions, another officer opened the bag and recovered a glass pipe, as well as two clear plastic baggies containing methamphetamine. Rippe was subsequently transported to the police station, where he remained overnight. The next day, he was advised of his *Miranda* rights and provided a statement in which he discussed the bag.

Rippe moved to suppress the bag and its contents, together with his statements to Sergeant Cricchio and the statements he made the next day. The Circuit Court of the First Circuit (circuit court)[1] granted the motion, finding that (1) Sergeant Cricchio's questions constituted custodial interrogation without prior *Miranda* warnings, (2) Rippe did not abandon the bag, and (3) the statements made by Rippe the next day were the fruit of the poisonous tree. Petitioner–Appellant State of Hawai'i appeals from the circuit court's August 24, 2006 order granting Rippe's motion to suppress evidence, and its November 3, 2006 order denying the State's motion for reconsideration.

We affirm in part and vacate in part, and remand for further proceedings. First, we conclude that Sergeant Cricchio's request that Rippe sign a consent form did not constitute interrogation, because the request was not reasonably likely to elicit an incriminating response. Rippe's disclaimer of ownership of the bag is therefore admissible, although Rippe's responses to Cricchio's follow-up questions were properly suppressed because those questions did constitute interrogation.

Second, considering Rippe's disclaimer of ownership of the bag in light of the surrounding circumstances, we conclude that Rippe abandoned the bag. Accordingly, we find that the search of the bag did not violate Rippe's rights, provided that the police acted lawfully in searching the BMW and removing the bag from it prior to Rippe's disclaimer of ownership. Since the circuit court did not address the lawfulness of that warrantless

---

1. The Honorable Michael A. Town presided.

search and seizure, we remand with regard to that issue.

Finally, we conclude that Rippe's statements to police on the day after his arrest were not fruit of the poisonous tree, subject however to the circuit court's determination of the lawfulness of the search of the BMW and seizure of the bag.

## I. BACKGROUND

At around 9:30 a.m. on January 30, 2006 Honolulu Police Department (HPD) Officer Michael Choy was approached by an unidentified person who stated that a male wearing a red baseball cap and grey shirt was removing a license plate from a vehicle parked on Ala Wai Boulevard in Waikiki.[2] After proceeding to the area, Officer Choy witnessed Rippe crossing Ala Wai Boulevard holding a license plate. The officer then saw Rippe leaning over the rear of a silver BMW sedan with no front license plate, at which point Officer Choy parked and exited his vehicle. Rippe started to walk away from the BMW, but Officer Choy stopped him to investigate. When Officer Choy asked Rippe if the BMW was his, Rippe responded "Yes[,]" and said that he found the license plate on the street. Officer Choy's report, which was admitted into evidence by stipulation of the parties, stated that he observed a license plate at the rear of the BMW which appeared to have been forced into a space between the trunk and body of the car.

A short time after Officer Choy encountered Rippe, other HPD officers arrived to assist. HPD Officer Joshua Helbling testified that when he arrived, "Officer Choy had ... Mr. Rippe sitting on the sidewalk." Offi-

cer Helbling stated that he suspected the BMW was stolen because the Vehicle Identification Numbers (VIN) on the dash and the "inner door" were missing, and the "housing on the steering column was ripped off with exposed wires." Officer Helbling testified that HPD officers removed from the BMW an "HPD ... parking placard" which had been taken in an Unauthorized Entry into a Motor Vehicle (UEMV) case, two IDs with Rippe's photo but a different name, "credit cards with various names" on them, and various types of currency.[3]

After the HPD officers confirmed that the license plate was from a vehicle registered to someone other than Rippe, Officer Choy arrested Rippe for Theft in the Fourth Degree, and Rippe was placed in the back seat of a police vehicle. Meanwhile, the HPD officers were able to locate a VIN number in the engine compartment of the BMW and determine that Rippe was the registered owner of the BMW.

Officer Helbling testified that while he looked for the BMW's VIN, he saw a blue nylon bag partially sticking out from beneath the driver's seat.[4] Officer Helbling subsequently took the bag out, and placed it on top of the car. When asked about the purpose of removing the bag, Officer Helbling testified:

> A. Well, that was actually taken out after Officer Lee had discovered the placard and [ran] the checks and it was discovered that that placard was taken in a UEMV.
>
> Q. Were you looking for identification in the blue nylon bag?
>
> A. Well, we—we had discovered stolen items or [verified]—that the placard was

---

2. This summary of the background facts is based on the circuit court's uncontested findings of fact, the testimony at the hearings on Rippe's motion to suppress and the State's motion for reconsideration, and police reports which were admitted into evidence by stipulation of the parties.

3. Officer Helbling testified that an HPD officer observed the placard "in plain view" through the rear passenger side window of the BMW, and then entered the vehicle to remove it. Officer Helbling also testified that several IDs, credit cards, and currency were recovered from a compartment in the front driver's side door of the

BMW, which was "ajar after Mr. Rippe made entry into the vehicle." However, the circuit court did not make any factual findings regarding the specific circumstances of the recovery of these items.

4. Although FOF 13 in the August 24, 2006 order granting the motion to suppress evidence states that "Sergeant Mark Cricchio observed the corner of a small blue nylon bag on the driver's side floorboard partially sticking out from under the seat[,]" the record shows that it was Officer Helbling who initially saw the bag and removed it from Rippe's car.

taken as a stolen item. We also had—Officer Lee had found the different credit cards and currency with different names on it. Besides, there was none that contained Mr. Rippe's name on [them]. So based on that, I removed the nylon bag from the floorboard and placed it on top of the—the car....

Q. But, Officer, what was the purpose in doing that?

. . . .

A. Well, we had already discovered stolen items in the car. And so I figured it possibly had another ID-form of ID inside.

After the blue nylon bag was removed from the BMW, Sergeant Cricchio took the bag over to Rippe and asked him if he would "sign a consent to search" the bag. Rippe responded that it was not his bag. Sergeant Cricchio then asked if the BMW was Rippe's, and Rippe responded that it was. Sergeant Cricchio informed Rippe that the blue nylon bag had been found in Rippe's BMW. Rippe responded that people put things in his car all the time, and that only the tools in the vehicle were his property.

Believing that Rippe had verbally disclaimed ownership of the blue nylon bag, and had thus abandoned it, Sergeant Cricchio had another HPD officer search the nylon bag. Upon opening the bag, HPD officers discovered that it contained a six inch glass pipe with what appeared to be methamphetamine residue, and a small black leather pouch. Inside the small leather pouch were two small clear plastic baggies containing methamphetamine. Rippe was then arrested for drug offenses.

Rippe was held in police custody overnight. The next morning, Rippe was given *Miranda* warnings and interviewed by HPD Detective Keith Horikawa. During the tape-recorded interview, Rippe stated *inter alia* that he had previously parked his car in Waikiki and had gone to retrieve it on the morning of his arrest. He said that one lock to the vehicle had been broken, and that when he arrived at the vehicle on that morning, it appeared that someone had been sleeping in it and there were numerous items in the car which did not belong to him. He said he saw the blue nylon bag by the "stick shift" of his car.

Rippe also stated that he did not know who owned the bag, but that he had opened the bag, inspected its contents, and then "discarded it [on the floor] cause [he] didn't want anything to do with it."

On February 6, 2006, Rippe was charged by written complaint with Promoting a Dangerous Drug in the Third Degree, in violation of Hawaii Revised Statutes (HRS) § 712–1243, Unlawful Use of Drug Paraphernalia, in violation of HRS § 329–43.5, and Theft in the Fourth Degree, in violation of HRS § 708–833(1).

Rippe filed a Motion to Suppress Evidence and Statements (Suppression Motion) that asked the circuit court to suppress all of the evidence found in the blue nylon bag, as well as his statements to Officer Choy and Sergeant Cricchio, and the tape-recorded statements he made to Detective Horikawa. In the Suppression Motion, Rippe contended that his statements to Sergeant Cricchio should be suppressed because he was subjected to a custodial interrogation without being given *Miranda* warnings, and that his subsequent statements to Detective Horikawa and the evidence in the bag should be suppressed because they were "fruits of the poisonous tree." Rippe also contended that police acted unlawfully when they searched the BMW and seized the blue nylon bag.

The circuit court granted the Suppression Motion in part, and on August 24, 2006 entered the "Findings of Facts, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence and Statements" (Suppression Order). The circuit court found that Officer Choy's initial inquiries to Rippe did not constitute custodial interrogation, but did not address the question of whether the search of the BMW and recovery of the blue nylon bag by the HPD officers was lawful. With regard to Sergeant Cricchio's questioning of Rippe, the findings of fact (FsOF) in the Suppression Order stated in pertinent part:

*FINDINGS OF FACT*

. . . .

17. Mr. Rippe was in custody and interrogated without first being read his *Miranda* rights.

. . . .

19. No search warrant for the nylon bag was obtained.

20. The nylon pouch was not abandoned.

21. The officers lacked probable cause to open the nylon pouch.

The conclusions of law (CsOL) in the Suppression Order stated in pertinent part:

## CONCLUSIONS OF LAW

. . . .

8. Defendant's verbal disclaimer of ownership of the nylon pouch and all other statements he made to Sergeant Cricchio [were] illegally obtained because he was subjected to custodial interrogation without first being advised of his *Miranda* rights.

9. The fruit of the poisonous tree doctrine requires that the evidence and any subsequent statements discovered as a result of the illegality of the police search be suppressed.

Accordingly, the circuit court suppressed the contents of the blue nylon bag, together with Rippe's statements to Sergeant Cricchio and Detective Horikawa.

The State filed a motion requesting that the circuit court reconsider the Suppression Order. On November 3, 2006, the circuit court entered the "Findings of Facts, Conclusions of Law and Order Denying The State's Motion to Reconsider Order Granting Defendant's Motion to Suppress Evidence and Statements" (Order Denying Reconsideration).

The FsOF and CsOL in the Order Denying Reconsideration stated in pertinent part:

## FINDINGS OF FACT

. . . .

18. Sergeant Cricchio's questions and/or statements were interrogations. Interrogation is defined as either express or implied questioning by police or words or actions which are reasonably likely to elicit an incriminating response. . . .

. . . .

## CONCLUSIONS OF LAW

. . . .

6. Sergeant Cricchio's questions and/or statements made to Mr. Rippe, after his arrest and while handcuffed, about signing a consent to search the bag and ownership of the bag was interrogation because it was "reasonably likely to elicit an incriminating response," . . . no matter what Mr. Rippe's answer might have been.

7. Mr. Rippe's verbal disclaimer of ownership of the nylon bag and all other statement he made to Sergeant Cricchio [were] illegally obtained because he was subjected to custodial interrogation without first being advised of his *Miranda* rights.

. . . .

10. Based upon the objective facts, the totality of the circumstance and credible evidence, the nylon bag was not abandoned. *Mahone*[5] is distinguishable because in the instant case the nylon bag was recovered from Mr. Rippe's private vehicle of which he was the registered owner and the only occupant. In *Mahone,* the bag that was searched was recovered from an apartment in a common area in which the defendants were merely overnight guests.

11. The fruit of the poisonous tree doctrine requires that the evidence and any subsequent statements discovered as a result of the illegality of the police search be suppressed.

## II. POINTS ON APPEAL

The State challenges both the August 24, 2006 Suppression Order and the November 3, 2006 Order Denying Reconsideration. Specifically, the State challenges (1) "The circuit court's conclusion that Sergeant Cric-

---

5. The circuit court was referring to *State v. Mahone,* 67 Haw. 644, 701 P.2d 171 (1985).

chio's request for consent to search the nylon bag and subsequent inquiries regarding ownership of the bag constituted interrogation," as reflected in FOF 17 and COL 8 in the Suppression Order, and FsOF 18 and 19, and CsOL 6 and 7 in the Order Denying Reconsideration; (2) "The circuit court's conclusion that the nylon bag was not abandoned," as reflected in FOF 20 in the Suppression Order and FOF 23 and COL 10 in the Order Denying Reconsideration; (3) "The circuit court's conclusion that the 'fruit of the poisonous tree' doctrine requires that the contents of the nylon bag and the subsequent statements made at the police station be suppressed," as reflected in COL 9 of the Suppression Order and COL 11 in the Order Denying Reconsideration; and (4) "The Suppression Order and the Order Denying Reconsideration."

## III. STANDARDS OF REVIEW

### A. Findings of Fact and Conclusions of Law in Pretrial Rulings In A Criminal Case

■ Appellate review of factual determinations made by the trial court deciding pretrial motions in a criminal case is governed by the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. The circuit court's conclusions of law are reviewed under the right/ wrong standard.

*State v. Walker*, 106 Hawai'i 1, 9, 100 P.3d 595, 603 (2004) (internal quotation marks and citations omitted) (quoting *State v. Naititi*, 104 Hawai'i 224, 233, 87 P.3d 893, 902 (2004)).

■ "A conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned." *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994) (internal quotation marks and citation omitted).

■ Substantial evidence is "credible evidence which is of sufficient quality and pro-

bative value to enable a person of reasonable caution to support a conclusion." *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (internal quotation marks and citation omitted).

### B. Motion to Suppress Evidence

■ A trial court's ruling on a motion to suppress evidence is reviewed de novo to determine whether the ruling was "right" or "wrong." The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.

*State v. Spillner*, 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007) (citations omitted).

### C. Motion For Reconsideration

■ The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."

*Cho v. State of Hawai'i*, 115 Hawai'i 373, 381, 168 P.3d 17, 25 (2007) (citations omitted).

### D. Custodial Interrogation

■ We review a circuit court's determinations about whether a defendant was subject to custodial interrogation *de novo*, under the "right/wrong" standard. *State v. Ketchum*, 97 Hawai'i 107, 115, 34 P.3d 1006, 1014 (2001). In doing so, we "exercise [our] own independent constitutional judgment, based on the facts of the case." *Id.* (citation omitted).

## IV. DISCUSSION

### A. Rippe's Statements To Sergeant Cricchio

■ The State challenges the circuit court's finding that Rippe's disclaimer of

ownership was the result of a custodial interrogation. Although the State concedes that Rippe was in custody at the time of his disclaimer, the State contends that "Sergeant Cricchio's request for consent to search the nylon bag and subsequent inquiries as to the ownership of the nylon bag were not interrogation[.]"

■ Article I, section 10 of the Hawaii Constitution provides in relevant part that "[n]o person shall ... be compelled in any criminal case to be a witness against oneself." "Thus, as a matter of state constitutional law, article I, section 10 requires that before reference is made at trial to statements made by the accused during custodial interrogation, the prosecutor must first demonstrate that certain safeguards were taken before the accused was questioned[,]" i.e., *Miranda* warnings. *State v. Ketchum*, 97 Hawai'i 107, 116, 34 P.3d 1006, 1015 (2001) (quoting *State v. Santiago*, 53 Haw. 254, 266, 492 P.2d 657, 664 (1971)).

■ The *Miranda* rule "is, at core, a constitutionally prescribed rule of evidence that requires the prosecution to lay a sufficient foundation-i.e., that the requisite warnings were administered and validly waived...." *Id.* at 117, 34 P.3d at 1016. "The prosecution's burden of establishing that the requisite warnings were given, however, is not triggered unless the totality of the circumstances reflect that the statement it seeks to adduce at trial was obtained as a result of a 'custodial interrogation'...." *Id.* Thus, the proponent of suppressing the incriminating statements has the initial burden of establishing that the incriminating statements were made while the declarant was in custody and being interrogated. *Id.* at 118, 34 P.3d at 1017.

■ Here, the record shows that HPD officers failed to instruct Rippe of his *Miranda* rights before Sergeant Cricchio requested consent to search the nylon bag, and the State concedes that Rippe was in custody at the time of the inquiries. Thus, the sole question is whether Sergeant Cricchio's questions to Rippe constituted interrogation.

■ Interrogation in the *Miranda* context is generally defined as "express questioning or its functional equivalent." *Ketchum*, 97 Hawai'i at 119, 34 P.3d at 1018 (quoting *State v. Ah Loo*, 94 Hawai'i 207, 210, 10 P.3d 728, 731 (2000)). To determine whether a police officer's inquiries constitute "interrogation," the totality of the circumstances must be objectively assessed. *Id.* Focusing on police conduct, the nature of the questions, and other relevant circumstances, "the ultimate question becomes whether the police officer should have known that his or her words or actions were reasonably likely to elicit an incriminating response from the person in custody." *Id.* (internal quotation marks and brackets omitted).

### 1. Sergeant Cricchio's request for consent to search the nylon bag did not constitute interrogation

We review *de novo* the circuit court's determination that Sergeant Cricchio subjected Rippe to interrogation when he asked if Rippe would sign a consent to search the nylon bag. *Ketchum*, 97 Hawai'i at 115, 34 P.3d at 1014. The vast majority of courts that have considered the issue, including this court, has concluded that a request for consent to search does not constitute interrogation. We agree with the reasoning reflected in these decisions, and accordingly conclude that Sergeant Cricchio's request did not constitute interrogation.

In *State v. Blackshire*, 10 Haw.App. 123, 126–28, 861 P.2d 736, 739–40 (1993), *overruled on other grounds by Ah Loo*, 94 Hawai'i at 211, 10 P.3d at 732, the police were investigating the defendant for narcotics violations, and had developed probable cause to arrest him based in part on a drug-sniffing dog alerting to the presence of narcotics in a room that had been occupied by defendant at the Maui Islander Resort. Police approached defendant on the grounds of the resort and began asking him questions, including where he was staying on Maui and whether he was carrying any narcotics, which defendant denied. *Id.* at 129, 861 P.2d at 740. They then asked for consent to search a bag that was on the ground next to defendant; defendant said "no problem," and a search of the bag turned up what appeared to be narcotics. *Id.* at 129–30, 861 P.2d at

740. Police had not given defendant any of the warnings required by *Miranda*.

This court found:

[The police officer's] request for Blackshire's permission to search inside Blackshire's bag was not a request for information. Although the content of Blackshire's bag was incriminating, the officer's request for permission to search it was not interrogation. Similarly, Blackshire's answer was "not in itself 'evidence of a testimonial or communicative nature.' " *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977).

*Id.* at 137, 861 P.2d at 743 (internal brackets omitted).

Although this court found that the request for consent was not itself interrogation, nevertheless it concluded that the evidence from the bag should be suppressed since the police officer's prior questions concerning where defendant was staying on Maui, and whether he was carrying narcotics, did constitute custodial interrogation. *Id.* ("this request for permission to search came while Blackshire was being subjected to custodial interrogation").

In contrast, the circuit court here found, and Rippe does not challenge on appeal, that Rippe had *not* been subjected to custodial interrogation prior to being asked to consent to a search of the nylon bag. Thus, since there was no prior custodial interrogation of Rippe, Sergeant Cricchio's request for consent "was not a request for information" and "was not interrogation" under the analysis in *Blackshire*. *Id.*

The rationale of the holding in *Blackshire*—that a request for consent to search is not a request for information, and, therefore, is not reasonably likely to elicit an incriminating response—has been adopted by a number of state and federal courts. *See, e.g., United States v. LaGrone*, 43 F.3d 332, 335 (7th Cir.1994) ("[B]ecause requesting consent to search is not likely to elicit an incriminating statement, such questioning is not interrogation, and thus *Miranda* warnings are not required."); *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977) ("A consent to a search is not the type of incriminating statement toward which the fifth amendment is

directed."); *United States v. Rodriguez–Garcia*, 983 F.2d 1563, 1568 (10th Cir.1993) ("Every federal circuit court which has addressed the *Miranda* issue presented here has reached the conclusion that a consent to search is not an incriminating statement."); *State v. Kiriluk*, 975 P.2d 469, 473–74 (Utah Ct.App.1999) ("Utah courts have not addressed this issue, but there is ample authority from other state and federal jurisdictions holding that a consent to search is not an incriminating statement for Fifth Amendment purposes."); *Everett v. State*, 893 So.2d 1278, 1286 (Fla.2004) (holding that a police officer's request for the defendant's consent to draw blood was not interrogation because "[s]uch a request for the consent to search is not reasonably likely to elicit an incriminating response"); *Commonwealth v. Wallace*, 70 Mass.App.Ct. 757, 877 N.E.2d 260, 265 n. 2 (2007) ("The overwhelming weight of authority is that a police request for consent to search from an individual in custody is not custodial interrogation for purposes of *Miranda*[.]") (citation omitted); *see also* 4 Wayne R. LaFave, *Search and Seizure* § 8.2(j), at 117–118 (4th ed.2004) (stating that even after a defendant invokes his right to counsel during a custodial interrogation, a police officer's request for a consent to search is not violative of the defendant's rights under *Miranda* because such an inquiry is not interrogation). To the extent courts have reached contrary results, they have done so in factual contexts different from those here. *See, e.g., United States v. Gilkeson*, 431 F.Supp.2d 270, 281–82 (N.D.N.Y. 2006) (evidence recovered pursuant to a consent to search a computer suppressed, when the police learned about the computer as a result of questioning undertaken in violation of *Miranda* after defendant asked for a lawyer); *United States v. Fleming*, 31 F.Supp.2d 3, 5 (D.D.C.1998) (holding that police could not ask a defendant to consent to a search after the defendant was advised of *Miranda* rights and requested an attorney).

Moreover, this conclusion is consistent with the approach taken by the Hawai'i Supreme Court in other contexts in determining whether a defendant has been subject to custodial interrogation. In *State v. Naititi*, 104 Hawai'i 224, 237, 87 P.3d 893, 906 (2004),

the Hawai'i Supreme Court found that an inquiry into whether the defendant "wished to make a statement and be afforded the assistance of an attorney," did not constitute interrogation. Specifically, the court stated, "By no stretch of the imagination could these preliminary 'yes-or-no' questions be construed as the type that [the detective] 'should have known ... were reasonably likely to elicit an incriminating response' from [the defendant]." *Id.* (citations omitted). Similarly here, Sergeant Cricchio's inquiry into whether Rippe would sign a form consenting to a search of the nylon bag, which required a simple "yes-or-no" answer, was not the type of question reasonably likely to elicit an incriminating response.

Thus, because Sergeant Cricchio's inquiry regarding the consent to search form did not constitute interrogation, the circuit court erred in ruling that Rippe's response to that inquiry, disclaiming ownership of the bag, should be suppressed.

### 2. Sergeant Cricchio's other inquiries constituted interrogation

■ The State also asserts that "Sergeant Cricchio's follow-up question [regarding Rippe's ownership of the BMW] and statement [about where the nylon bag was found] were part of normal inventory procedure pursuant to the arrest of a suspect and were not interrogation because they were not reasonably likely to and did not in fact elicit an incriminating response from Defendant." However, these arguments are without merit.

Even assuming *arguendo* that Sergeant Cricchio's follow-up inquiries were part of an inventory procedure, Sergeant Cricchio should have known that his inquiries were reasonably likely to elicit an incriminating response from Rippe. When Sergeant Cricchio spoke to Rippe, HPD officers had already confirmed that an HPD placard found in Rippe's BMW had been stolen, that there

were two IDs in the car which had Rippe's photograph but a different name, and that various credit cards with different names had been found in the car. Under the totality of the circumstances, Sergeant Cricchio should have known that Rippe's answers to his inquiries were likely to elicit an incriminating response regarding Rippe's relationship to the vehicle and its contents. *See Ketchum,* 97 Hawai'i at 121–22, 34 P.3d at 1020–21 (police should have known that their questions to defendant regarding his residential address were reasonably likely to elicit an incriminating response, when police asked the questions after detaining defendant in a residence where they expected to find illegal drugs); *see also State v. Joseph,* 109 Hawai'i 482, 495, 128 P.3d 795, 808 (2006) ("An 'incriminating response' refers to both inculpatory and exculpatory responses.").

Accordingly, the circuit court correctly suppressed Rippe's statements made in response to Sergeant Cricchio's follow-up inquiries.[6]

### B. Rippe Has Standing To Challenge The Search Of The Bag

Next, the State asserts that Rippe "lacks standing to challenge the search of the nylon bag because, given his verbal disclaimer of ownership, defendant had no objectively reasonable expectation of privacy in the nylon bag." However, this argument is without merit because, as the Hawai'i Supreme Court has stated, "[a] criminal defendant always has standing to challenge the admission of evidence introduced by the state." *State v. Taua,* 98 Hawai'i 426, 436 n. 19, 49 P.3d 1227, 1237 n. 19 (2002) (quoting *State v. Tanner,* 304 Or. 312, 745 P.2d 757, 759 (1987)); *see State v. Dias,* 52 Haw. 100, 105, 470 P.2d 510, 513 (1970) ("The short answer to the question of standing in this case is that the state cannot charge a person with possession and then deny that person his remedy at law to

---

**6.** The State does not argue, and therefore we do not address, *see* Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b), whether these statements, although inadmissible at trial, could nevertheless be considered at this stage of the proceeding for the limited purpose of determining whether the nylon bag was abandoned. *See United States v. Patane,* 542 U.S. 630, 124 S.Ct.

2620, 159 L.Ed.2d 667 (2004) (plurality opinion) (holding that although non-coerced statements made during an un-Mirandized custodial interrogation are inadmissible as direct evidence against the defendant, they may be used for other purposes). Accordingly, we will not consider these statements for the purposes of our analysis in section IV.C., *infra.*

object to the search and seizure of that which the state says is his.").

## C. Rippe Abandoned The Bag

██ The State argues that Rippe "had no expectation of privacy in the nylon bag because he explicitly and unambiguously abandoned it." We agree.

██ "[W]hen a defendant 'abandons' property, he or she relinquishes any reasonable expectation of privacy so that a warrantless search and seizure by government officials does not violate the Fourth Amendment of the United States Constitution or Article I, Section 7 of the Hawai'i Constitution." *State v. Kolia*, 116 Hawai'i 29, 33–34, 169 P.3d 981, 985–86 (App.2007). Abandonment is primarily a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." *State v. Mahone*, 67 Haw. 644, 648, 701 P.2d 171, 175 (1985) (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)).

We are guided by several Hawai'i Supreme Court decisions which considered whether a defendant abandoned property. In *State v. Joyner*, 66 Haw. 543, 669 P.2d 152 (1983), police officers entered a bathhouse while executing a search warrant for gambling devices. *Id.* at 544, 669 P.2d at 153. They smelled marijuana smoke in a sauna, where they discovered defendant and three other men. *Id.* There was a brown vinyl athletic bag located one to two feet from the defendant; the officers asked the four men whose bag it was, and none of them responded. *Id.* Officers then opened the bag and found marijuana, cocaine, and several forms of identification with the defendant's name on them. *Id.*

On appeal, the Hawai'i Supreme Court affirmed the trial court's order suppressing the evidence found in the bag. In holding that the defendant's silence did not constitute abandonment of the bag, the court stated that "the defendant did not actively discard the bag or *expressly disclaim* its ownership[.]" *Id.* at 545, 669 P.2d at 153 (emphasis added). Thus, the Hawai'i Supreme Court's analysis in *Joyner* suggests that either an express disclaimer of ownership or active

discarding of property can establish abandonment.

Two years after *Joyner*, the Hawai'i Supreme Court considered abandonment again in *Mahone*. In that case, police were called to investigate a burglary at a high-rise building in Waikiki. 67 Haw. at 645, 701 P.2d at 173. The police knocked on the door of a neighboring studio apartment and spoke with the female tenant. *Id.* As they did so, they observed three men inside the apartment, whom the tenant identified as guests. *Id.* The tenant told police that two of the men, who became defendants in the case, had been in and out of the apartment and had brought back with them a blue, athletic canvas-type bag. *Id.* The defendants denied having brought a bag into the apartment, and denied owning any blue bag. *Id.* at 646, 701 P.2d at 173.

Police asked the men to step outside, and the tenant authorized police to conduct a search. *Id.* During the search, police recovered a blue athletic bag, as well as a cigar box, both of which contained items stolen during the burglary. *Id.*

The Hawai'i Supreme Court reversed the trial court's order suppressing the evidence recovered during the search. *Id.* at 648, 701 P.2d at 175. In examining whether the defendants had an expectation of privacy in the bag searched by police, the court stated:

> The Defendants were asked before the search began, whether they brought a bag into the apartment and Defendants disclaimed having any such bag and denied ownership of any bag. Further, while the search of the premises was being conducted in the nearby presence of the Defendants, Defendants voiced no protest to the search. In view of these circumstances, we hold that the Defendants abandoned any claim of ownership of the bag and any privacy interest thereto.

*Id.*

Although *Mahone* involved the search of an apartment, the Hawai'i Supreme Court drew upon the decisions of federal courts that considered the issue of whether a disclaimer of ownership established abandonment in the context of vehicle searches. *Id.*

The cases cited by the supreme court in *Mahone* included *United States v. Miller*, 589 F.2d 1117 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979), in which police detained the defendant on suspicion of smuggling marijuana. Officers found four suitcases in a vehicle which defendant had been driving, and asked the defendant about the suitcases. *Id.* at 1123. Defendant disclaimed any ownership of or knowledge of the suitcases, although he stated that he knew the combination of the lock of one of them, and unlocked it. *Id.* Officers searched the suitcases, and found hashish in the one which had been locked. *Id.* The United States Court of Appeals for the First Circuit affirmed the trial court's refusal to suppress the contents of the bag, noting "one who disclaims any interest in luggage thereby disclaims any concern about whether or not the contents of the luggage remain private." *Id.* at 1131.

The supreme court in *Mahone* also referred to *United States v. Veatch*, 674 F.2d 1217 (9th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), during its discussion of abandonment. There the defendant was stopped by police while riding in a limousine which the defendant had purchased. *Id.* at 1219. The police asked Veatch if a wallet on the seat belonged to him and if he wanted to take it with him, but Veatch denied that the wallet was his. *Id.* Police searched the wallet and recovered evidence relevant to a fraud case. *Id.* The United States Court of Appeals for the Ninth Circuit found that the trial court correctly denied a motion to suppress the evidence. *Id.* at 1221 ("Veatch expressly disclaimed ownership of the wallet to the officer. This

left him with no reasonable expectation of privacy in the wallet and he cannot now object to its search.").

Here, like the defendants in *Mahone*, Rippe expressly disclaimed ownership of the bag. *Cf. Joyner*, 66 Haw. at 545, 669 P.2d at 153 (defendant's silence when police asked about the ownership of a bag did not constitute an intent to abandon it). Furthermore, there is no evidence in the record that Rippe subsequently protested the search or otherwise gave any indication that his disclaimer was equivocal. *See Mahone*, 67 Haw. at 648, 701 P.2d at 175. Moreover, the evidence of Rippe's intent to abandon the bag is even stronger than the evidence in *Mahone*. In *Mahone*, the two defendants disclaimed ownership of the bag after they were "questioned" by police about "whether they brought a bag into the apartment." *Id.* Rippe spontaneously denied ownership in response to a request to sign a consent to search form, rather than in response to police interrogation.[7] Considering all of these circumstances, Rippe's unequivocal disclaimer of ownership shows his intent to abandon the bag, and thus he relinquished any expectation of privacy he had in the contents of the bag.

In support of his contention that his verbal disclaimer did not establish abandonment, Rippe cites to *People v. Cameron*, 73 Misc.2d 790, 797, 342 N.Y.S.2d 773, 782 (N.Y.Sup.Ct. 1973), where a New York supreme court judge found that the defendant did not abandon the bag he disclaimed owning. However, in light of *Joyner* and *Mahone*, the analysis by the court in *Cameron* is not applicable in Hawai'i. The court in *Cameron* stated, "While abandoned property is always subject

7. Thus, this case is distinguishable from cases in which courts found that a defendant did not abandon a bag or other object when the disclaimer was given in response to police questioning, under circumstances where acknowledging ownership of an item would inculpate the defendant. *Cf. United States v. Perea*, 986 F.2d 633, 636–37 (2d Cir.1993), *on remand* 848 F.Supp. 1101, 1103 (E.D.N.Y.1994) (defendant found not to have abandoned a bag based on disclaimer of ownership, where defendant testified that he was pulled from a taxi by federal agents at gunpoint, thrown to the ground and handcuffed, and then asked whether a bag in the trunk was his); *New Jersey v. Johnson*, 193 N.J. 528, 940 A.2d 1185,

1198 (2008) (defendant who was trying to take a concealed weapon out of a house while police were executing an arrest warrant "should [not] be stripped of standing because he disclaimed ownership of the duffel bag in response to police questioning"); 6 Wayne R. LaFave, *Search and Seizure* § 11.3(f), at 225 (4th ed. 2004) ("[A] mere disclaimer of ownership in an effort to avoid making an incriminating statement in response to police questioning should not alone be deemed to constitute abandonment."). In contrast, Rippe could have simply refused to sign the form without either acknowledging or repudiating his ownership of the bag.

to seizure, proof of intent to discard and abandon must be shown." *Id.* (citations omitted). In reasoning that the defendant's denial of ownership did not indicate an intent to abandon the bag, the court stated, "The bag was not thrown from the car. It remained under the seat [where the defendant had placed it prior to the stop]. Defendants ... only denied ownership, not possession." *Id.* However, in Hawai'i, as the Hawai'i Supreme Court's decisions in *Mahone,* 67 Haw. at 648, 701 P.2d at 175, and *Joyner,* 66 Haw. at 545, 669 P.2d at 153 illustrate, the intent to abandon an item does not have to come from the physical act of discarding it, but may be found in a defendant's disclaimer of ownership.

Accordingly, when viewed in context, Rippe's explicit disclaimer of ownership of the bag objectively showed his intent to abandon it. When Rippe abandoned the bag, he relinquished any expectation of privacy he had in the bag and its contents, and therefore, his right to privacy under Article I, section 7 of the Hawai'i Constitution were not violated when the police searched the bag.

### D. Legality of the Police Search of Rippe's Automobile and Seizure of the Bag

Rippe argues that there is an alternate ground that supports the circuit court's suppression of the blue nylon bag and Rippe's subsequent statements about it. Specifically, Rippe contends that the police search of the BMW, during which the bag was taken from the vehicle and then shown to Rippe, was itself unlawful. Rippe raised this issue in the Suppression Motion, although the circuit court did not rule on it when it granted the Suppression Motion and denied the motion for reconsideration.

If the warrantless search of the BMW and seizure of the bag was unlawful, then Rippe's subsequent disclaimer of ownership of the bag would be ineffective if it was tainted by the prior illegality. *See, e.g., United States*

*v. Ward,* 961 F.2d 1526, 1535 (10th Cir.1992), *overruled on other grounds by United States v. Little,* 18 F.3d 1499, 1504 (10th Cir.1994) ("Abandonment will not be recognized when it is the result of illegal police conduct.")(quoting *United States v. Brady,* 842 F.2d 1313, 1315 (D.C.Cir.1988) (brackets omitted)); *cf. State v. Quino,* 74 Haw. 161, 840 P.2d 358 (1992) (suppressing evidence that was discarded by defendant after he was unreasonably seized by police).

Although Rippe suggests that we can find on this record that the search of the BMW and seizure of the bag was not lawful, we believe that the better course is to remand so that the circuit court can determine the issue in the first instance. Such an inquiry would address whether there was probable cause and exigent circumstances for police to perform a warrantless search of Rippe's automobile, *see State v. Agnasan,* 62 Haw. 252, 255–56, 614 P.2d 393, 395–96 (1980) (examining the "automobile exception" to the exclusionary rule for evidence seized without a warrant), or whether there was some other basis for a warrantless search and seizure. If the search and seizure was lawful, then Rippe's abandonment of the blue nylon bag would be effective, and the search of that bag and the subsequent statements made by Rippe at the police station regarding the bag and its contents would be admissible. If the search or the seizure was unlawful and the taint of any illegality had not been dissipated by the time Rippe disclaimed the bag, the contents of the bag and Rippe's subsequent statements concerning it should be suppressed.[8]

### V. CONCLUSION

We affirm in part, and vacate in part, the August 24, 2006 Findings of Facts, Conclusions of Law and Order Granting Defendant's Motion to Suppress Evidence and Statements and the November 3, 2006 Findings of Facts, Conclusions of Law and Order Denying the State's Motion to Reconsider Order Granting Defendant's Motion to Suppress Evidence and Statements. Specifical-

---

8. The State does not contend that the statements were admissible even if the search was unlawful. *See State v. Pau'u,* 72 Haw. 505, 510, 824 P.2d 833, 836 (1992) ("The State, therefore, had to demonstrate that the taint of the illegal search of the bag had been dissipated or that the waivers were induced by a source independent of the illegal search.").

ly, we vacate those portions of the two orders which held that Rippe's disclaimer of ownership of the bag was the product of custodial interrogation, but affirm the suppression of the statements that Rippe made to Sergeant Cricchio after Rippe disclaimed ownership. We also vacate those portions of the orders which held that Rippe did not abandon the bag, and that his statements to Detective Horikawa regarding the bag were the fruit of the poisonous tree, subject to the circuit court's determination of the legality of the police search of Rippe's automobile and seizure of the bag. Finally, we remand for further proceedings consistent with this opinion.

